UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
-------------------------------------------------------
                                                        :
DIRECT SUPPLY, INC.,                                    :
                                                        :   CASE NO. 1:11-CV-683
         Plaintiff,                                     :
                                                        :
     v.                                                 :   OPINION & ORDER
                                                        :   [Resolving Doc. Nos. 3, 4, & 7]
SPECIALTY HOSPITALS OF                                  :
AMERICA, LLC, *et al.*,                                 :
                                                        :
         Defendants.                                    :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this lawsuit for payment for delivered products and provided services, Plaintiff Direct Supply, Inc. (Direct Supply) sues Defendants Specialty Hospitals of America, LLC, Specialty Hospitals of Washington, LLC (together, Specialty Hospitals),[1] and Not-For-Profit Hospital Corporation (NFP) for breach of contract and quantum meruit. Specialty Hospitals moves to dismiss, arguing that Direct Supply failed to join a necessary party. [Docs. 3 & 4].[2] NFP also moves to dismiss, arguing that Direct Supply has failed to state a claim against NFP. [Doc. 7]. Direct Supply opposes these motions. [Docs. 13 & 14]. Additionally, Specialty Hospitals opposes NFP's motion to dismiss. [Doc. 12]. For the following reasons, the Court **DENIES** Specialty Hospitals's motions to dismiss and **GRANTS IN PART** and **DENIES IN PART** NFP's motion to dismiss.

I.

On November 7, 2007, the District of Columbia entered into a partnership with Specialty

---

[1] Specialty Hospitals of Washington, LLC, is a subsidiary of Specialty Hospitals of America, LLC. *See* [Doc. 1, ¶ 8].

[2] Specialty Hospitals of America, LLC, and Specialty Hospitals of Washington, LLC, both filed identical motions to dismiss.

Case No. 1:11-CV-683
Gwin, J.

Hospitals for the acquisition and improvement of the Greater Southeast Community Hospital. *See* [Doc. 3-1, at 23-40]. The District of Columbia was the sole limited partner and owned ninety-nine percent of the partnership's interest. *Id.* at 28, § 1.6. Specialty Hospitals, as the general partner, owned one percent of the partnership's interest, *id.*, and was responsible for the management, operation, and control of the partnership's business, *id.* at 33, § 5.2. Specialty Hospitals had no authority to "obligate, bind or commit [the District of Columbia] in any way for any obligation." *Id.* at 30, § 4.2(a). Also, the District of Columbia was not liable to the partnership for any obligations, except its agreed capital contributions. *Id.* at 33, § 5.1.

Consistent with the agreement, Specialty Hospitals purchased the old Greater Southeast Community Hospital and began operations under the name United Medical Center. [Doc. 1, ¶ 8]. Plaintiff Direct Supply and Defendant Specialty Hospitals entered into two "Product and Services Agreements" under which Direct Supply, true to its name, agreed to supply "certain products and services to [United Medical Center] for the operation of the facility." *Id.* ¶ 9. Although Direct Supply kept up its end of the agreement and has repeatedly demanded full payment, a balance of $462,055.17 (not including interest and costs) remains unpaid to Direct Supply. *Id.* ¶ 10. On August 21, 2009, and June 9, 2010, Specialty Hospitals's Regional Controller acknowledged Specialty Hospitals's obligation to pay this outstanding balance. *Id.* ¶ 11.

On July 9, 2010, the District of Columbia took control of United Medical Center. [Doc. 1, ¶ 12]. First, the District transferred the United Medical Center property to itself by a Substitute Trustee's Deed, *see* [Doc. 7-4], and formed NFP, [Doc. 1, ¶ 12]; *see* [Doc. 7-5]. Then, in a mayoral order (No. 10-117), the mayor of the District of Columbia transferred the rights and obligations of United Medical Center to the newly formed NFP. [Doc. 1, ¶ 12]; *see* [Doc. 7-6]. In response to the

Case No. 1:11-CV-683
Gwin, J.

District's takeover, Specialty Hospitals provided the District of Columbia with notice, pursuant to D.C. Code § 12-309, that it planned to pursue legal remedies, *see* [Doc. 3-1, at 21], and has since filed a lawsuit challenging the takeover,[3/] [Doc. 1 at ¶ 12]; *see also* [Doc. 7-3, at 6].

After the District of Columbia took over United Medical Center, Specialty Hospitals continued to acknowledge its liability for payment to Direct Supply under the Products and Services Agreements and even made a payment towards the balance on July 30, 2010. [Doc. 1, ¶ 13]. But in a change of tune, on December 22, 2010, Specialty Hospitals notified Direct Supply that it believed NFP—not Specialty Hospitals—was now liable for the outstanding balance. *Id.* at ¶ 14.

On January 26, 2011, Direct Supply sent letters to NFP and to Specialty Hospitals's attorney again demanding payment. *Id.* at ¶¶ 15-16. When neither responded, Direct Supply brought this breach-of-contract and quantum-meruit action against Specialty Hospitals and, in the alternative, against NFP. *See* [Doc. 1].[4/]

Specialty Hospitals moves to dismiss on the theory that the District of Columbia is a necessary party required to be joined under Federal Rule of Civil Procedure 19. [Docs. 3 & 4]. NFP also moves to dismiss, on the theory that Direct Supply has not and cannot state a claim against NFP because Mayoral Order 10-117 transferred Specialty Hospitals's assets to NFP but did not transfer any of Specialty Hospitals's liabilities to NFP. [Doc. 7].[5/]

---

[3/]Specialty Hospitals's challenge to the legality of the District's takeover is *CMC Realty v. Fenty*, Civ. Action 10-004571-B, Superior Court for the District of Columbia. [Doc. 7-3, at 6].

[4/]The parties agree that Count IV of Direct Supply's complaint—though mistakenly labeled as a breach-of-contract claim—purports to state a claim for quantum meruit against NFP. *See* [Doc. 7-1, at 5 n.3]; [Doc. 26, at 2]; [Doc. 12, at 4].

[5/]In addition, Direct Supply has moved for summary judgment, *see* [Doc. 15], arguing that no party denies the debt and that the Court's resolution of NFP's motion will settle the claims as a matter of law. [Doc. 14, at 2-3]. The Court previously stayed briefing on Direct Supply's motion pending resolution of the Defendants' motions to dismiss.

Case No. 1:11-CV-683
Gwin, J.

The Court considers the two motions in turn.

## II.

NFP moves to dismiss for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). For Direct Supply to defeat this motion, its complaint must have "facial plausibility," requiring that the pleading possess "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When evaluating a Rule 12(b)(6) motion, the Court must construe the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979). Although factual allegations are assumed to be true, those allegations must still be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Additionally, the Court need not "accept legal conclusions cast in [the complaint] as factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

NFP argues that, as a matter of law, Direct Supply's breach-of-contract and quantum-meruit claims against it should be dismissed because Mayoral Order 10-117 did not transfer any of Specialty Hospitals's liabilities to NFP; the order transferred only Specialty Hospitals's assets.[6] Accordingly, NFP says it cannot be held liable for money owed on any of the products or services that Direct

---

*See* [Doc. 17].

[6] In support of its motion, NFP points to three cases in which the Superior Court for the District of Columbia held that breach-of-contract claims could be brought by unpaid suppliers against Specialty Hospitals's subsidiaries, but not against the District of Columbia or NFP. *See* [Doc. 7-3 (*Sodexo Operations, LLC v. Capitol Med. Ctr.*, Civil Action No. 2010 CA 002467 B (D.C. Super. Feb. 11, 2011))]; [Doc. 24-1 (*Greater Southeast Community Emergency Physicians, LLC v. Capitol Medical Center, LLC*, Case No. 2011 CA 000712 C (D.C. Super. Nov. 15, 2011))]; [Doc. 25-1 (*MedAssets Net Revenue Systems, LLC v. Capitol Medical Center, LLC*, Case No. 2010 CA 005679 C (D.C. Super. Apr. 4, 2012))].

-4-

Case No. 1:11-CV-683
Gwin, J.

Supply provided.

### A. Count III—Direct Supply Sues NFP for Breach of Contract

Direct Supply asserted its breach-of-contract claim against NFP as an alternative to its breach-of-contract claim against Specialty Hospitals to the extent "that any [of Specialty Hospitals's] obligations arising under the Products and Services Agreements were transferred to NFP pursuant to Mayoral Order 10-117." [Doc. 1, ¶ 31].[7/] Under D.C. law,[8/] Specialty Hospitals's contractual liabilities could have transferred to NFP in one of two ways. *First*, if the mayoral order assigned[9/] Specialty Hospitals's contracts to NFP, then, as the assignee of those contracts, NFP "stands in the shoes of [Specialty Hospitals] and acquires the same rights and liabilities as if [NFP] had been an original party to the contract." *Manganaro Corp. v. Jefferson at Penn Quarter, L.P.*, No. Civ. A. 04-2133 GK, 2005 WL 3273979, at *3 (D.D.C. Aug. 9, 2005). *Second*, even if the mayoral order did not assign Specialty Hospitals's contracts to NFP, the mayor's transfer of Specialty Hospitals's assets to NFP may have also—by operation of D.C. common law—transferred Specialty Hospitals's

---

[7/] Direct Supply does not allege or argue that the District of Columbia was a party to the Products and Services Agreements or that the District became *contractually* liable to Direct Supply on those contracts by virtue of its participation in the limited partnership. Apparently, Direct Supply agrees that "Specialty Hospitals had no authority to "obligate, bind or commit [the District of Columbia] in any way for any obligation," [Doc. 3-1, at 30, § 4.2(a)], and that the District of Columbia was not liable to the partnership for any obligations except its agreed capital contributions, *id.* at 33, § 5.1.

[8/] The Court Reform Act of 1970 set up the District of Columbia's court system to be comparable to those of the states. *Pernell v. Southall Realty*, 416 U.S. 363, 367 (1974). Historically, D.C. courts have provided the applicable law in diversity cases, *Lee Flintkote Co.*, 593 F.2d 1275, 1278 n.14 (D.C. Cir. 1979), concerning both statutory and common law, *Pernell*, 416 U.S. at 368. The District of Columbia Court of Appeals is to be treated as the highest court of the state. *Id.* Although this Court is not bound by *Erie* to defer to the D.C. Superior Court's interpretation of law, under some circumstances "deferring to a well-reasoned, carefully researched opinion on local law is both appropriate and in keeping with the Congressional purpose reorganizing the judiciary of the District of Columbia." *Norwood v. Marrocco*, 780 F.2d 110, 113 (D.C. Cir. 1986).

[9/] Direct Supply argues that Specialty Hospitals's contractual duty to pay was assigned to NFP. Despite some apparent confusion in terms, *compare* Restatement (Second) of Contracts § 317(1) (1981), *and* Restatement (Second) of Contracts § 317 cmt. a (1981) *with* Restatement (Second) of Contracts § 318(1) (1981), the Court understands Direct Supply's argument to be that NFP, at some point, assumed Specialty Hospitals's contractual obligation to pay.

Case No. 1:11-CV-683
Gwin, J.

liabilities. Nevertheless, Direct Supply has not alleged facts sufficient to "raise a right to relief [under either contract theory] above the speculative level." *Twombly*, 550 U.S. at 555.

First, Mayoral Order 10-117 never assigned Specialty Hospitals's contracts with Direct Supply to NFP. It transferred only "[t]he Hospital Property and all other existing rights and obligations," which had been conveyed to the District of Columbia by the Substitute Trustee's Deed. [Doc. 7-6, at 1].[10/] The Substitute Trustee's Deed, in turn, had conveyed only the hospital's "land and premises, together with the improvements, easements, and appurtenances . . . and all furniture, furnishings, fixtures, goods, equipment, inventory or personal property." *Id.* Neither the mayoral order nor the deed mention any assignment of Specialty Hospitals's contracts. Nor has Direct Supply pleaded any other fact giving rise to an inference that NFP ever assumed Specialty Hospitals's obligations to NFP. Accordingly, Direct Supply has failed to state a breach-of-contract claim against NFP under this theory.

Second, Specialty Hospitals's liabilities did not—by operation of D.C. common law—pass to NFP when Mayoral Order 10-117 conveyed Specialty Hospitals's assets. D.C. common law provides, as a general rule, that when a business entity acquires the assets of another business, the successor is not liable for the predecessor's debts or liabilities. *Bingham v. Goldberg, Marchesano, Kohlman, Inc.*, 637 A.2d 81, 89 (D.C. 1994). To be sure, this is not an absolute rule; four established exceptions place liability for a predecessor's debts upon the entity acquiring the assets. Specifically,

---

[10/]When deciding a Rule 12(b)(6) motion, courts may consider "documents attached to or incorporated by reference in the complaint and matters subject to judicial notice." *Ruffin v. Gray*, 443 F. App'x 562, 563 (D.C. Cir. 2011) (per curiam) (quoting Fed. R. Civ. P. 12(b)(6)); *see also Redding v. District of Columbia*, 828 F. Supp. 2d 272, 278 (D.D.C. 2011). Mayoral Order 10-117 is incorporated by reference in the complaint. *See, e.g.*, [Doc. 1, ¶ 31]. In addition, mayoral orders are public records setting out a public office's activities. *See* Fed. R. Evid. 803(8). Public records are matters subject to judicial notice and may considered when deciding motions to dismiss. *U.S. v. Philip Morris Inc.*, 116 F. Supp. 2d 131, 154 (D.D.C. 2000).

Case No. 1:11-CV-683
Gwin, J.

when:

    (1)    the buyer expressly or impliedly agrees to assume such debts; or
    (2)    the transaction amounts to a de facto merger of the buyer and seller; or
    (3)    the buying corporation is a "mere continuation" of the selling corporation; or
    (4)    the transaction is entered into fraudulently in order to escape liability for such debts.

*Id.* at 89-90. But Direct Supply does not even argue that any of these exceptions apply, much less set forth facts in its complaint that, if true, might establish NFP's contractual liability under any of these exceptions to the general rule.

First, the mayoral order did not transfer Specialty Hospitals's contractual debt to NFP. Expressly, the order transferred only the "obligations transferred to the District of Columbia under the [July 9, 2010,] Substitute Trustee's Deed." [Doc. 7-6, at 1]. The Substitute Trustee's Deed describes the transferred property and does not include any of Specialty Hospitals's contractual debts. *See* [Doc. 7-4, at 2]; *see also* [Doc. 7-6, at 1]; [Doc. 24-1, at 13-14 (*Greater Southeast Community Emergency Physicians, LLC v. Capitol Medical Center, LLC*, Case No. 2011 CA 000712 C, (D.C. Super. Nov. 15, 2011))] ("[N]either the District [of Columbia] nor NFP expressly assumed all of [Specialty Hospitals's] liabilities.").[11]

Nor does the complaint suggest that NFP impliedly accepted Specialty Hospitals's debts when it received the assets transferred by Mayoral Order 10-117. *See Portfolio Fin. Servicing Co. ex rel. Jacom Computer Servs., Inc. v. Sharemax.com, Inc.*, 334 F. Supp. 2d 620, 625 (D.N.J. 2004) (Three factors determine whether a corporation has implicitly assumed the debts of its predecessor: "(1) whether the successor's conduct indicated its intention to assume the debt; (2) whether the

---

[11] The defendant in this case was Capitol Medical Center, a subsidiary of Specialty Hospitals that had operated United Medical Center. For readability, all subsidiaries of Specialty Hospitals are referred to as Specialty Hospitals.

Case No. 1:11-CV-683
Gwin, J.

creditor relied on the conduct and the effect of any reliance; and (3) whether the successor's representatives admitted liability."). As Direct Supply acknowledges, NFP has never admitted liability for Specialty Hospitals's debts. [Doc. 1, ¶ 16]. Instead, Specialty Hospitals admitted that it was liable for those debts. [Doc. 1, ¶ 13]. And, Direct Supply admits that it was Specialty Hospitals's admission of liability—not any representation by NFP—that Direct Supply had relied on when it decided against attempting to collect payment from the District of Columbia. *Id.* Direct Supply's complaint does not suggest that NFP impliedly assumed Specialty Hospitals's contractual debts. *Accord* [Doc. 7-3, at 5 (*Sodexo Operations, LLC v. Capitol Med. Ctr.*, Civil Action No. 2010 CA 002467 B (Feb. 11, 2011))] (no evidence indicates "any conduct that would signify the District's intent to assume [Specialty Hospitals's] debt, any reliance by [the plaintiff] on such conduct, [or] any admission of liability").

Second, Direct Supply has not alleged a de facto merger of the Specialty Hospitals and NFP. They remain separate entities, and the de-facto-merger exception generally requires that the two entities—the predecessor entity and the acquiring entity—be essentially the same. *See, e.g.*, [Doc. 24-1, at 14 (*Greater Southeast Community Emergency Physicians, LLC v. Capitol Medical Center, LLC*, Case No. 2011 CA 000712 C, (D.C. Super. Nov. 15, 2011))] (The merger exception does not apply when Specialty Hospitals, the predecessor entity, "continues to retain its separate existence."); *Rivas v. Dist. Int'l Trucks*, Civ. A. No. 85–3411 BDP/PJA, 1989 WL 117871 (D.D.C. Oct. 5, 1989) (For the de-facto-merger exception to apply "there must have been continuity of ownership; i.e., the succession of the selling corporation's stockholders to stockholder status in the purchasing corporation."). Specialty Hospitals continues to exist separate and apart from NFP. And the complaint makes no allegations suggesting any affiliation between Specialty Hospitals and NFP.

Case No. 1:11-CV-683
Gwin, J.

*Accord* [Doc. 7-3, at 5 (*Sodexo Operations, LLC v. Capitol Med. Ctr.*, Civil Action No. 2010 CA 002467 B (D.C. Super. Feb. 11, 2011))] (finding no evidence that the District merged with Specialty's Hospitals).

Nor has Direct Supply alleged that NFP is a "mere continuation" of Specialty Hospitals. An acquiring entity is a mere continuation of its predecessor when "there is a continuation of the corporate entity of the seller"—it's not enough that "there is a continuation of the seller's business operation." *Bingham*, 637 A.2d at 92 (quoting *Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1458 (11th Cir. 1985)). Specialty Hospitals did not sell United Medical Center to NFP; the District of Columbia took the hospital from Specialty Hospitals and gave it to NFP. [Doc. 1, ¶ 12]. Specialty Hospitals's corporate identity has not continued as NFP; it was a complete change of ownership, and Specialty Hospitals has *challenged* the takeover. [Doc. 1, ¶ 12]. Additionally, Specialty Hospitals is a privately owned corporation, [Doc. 1, ¶¶ 2 & 3], while NFP is a government-created, non-profit corporation, [Doc. 1, ¶¶ 4 & 12]. NFP and Specialty Hospitals remain separate; NFP is not a corporate continuation of Specialty Hospitals, and Direct Supply does not allege otherwise. *Accord* [Doc. 24-1, at 15 (*Greater Southeast Community Emergency Physicians, LLC v. Capitol Medical Center, LLC*, Case No. 2011 CA 000712 C, (D.C. Super. Nov. 15, 2011))] (finding that NFP is not a mere continuation of Specialty Hospitals because there was no consented sale of Specialty Hospitals's assets and there was a complete change of ownership).

Finally, Direct Supply does not allege that Specialty Hospitals was trying to escape its debts by virtue of a fraudulent transfer. As Direct Supply's complaint acknowledges, "Specialty Hospitals challenged the District of Columbia's takeover of [United Medical Center] and NFP's assumption of control over the facility." [Doc. 1, ¶ 12]. Instead, the takeover was the District's response to

-9-

Case No. 1:11-CV-683
Gwin, J.

Specialty Hospitals's breach of its agreement with the District. [Doc. 7-4, at 1, ¶ D]; *accord* [Doc. 25-1, at 4 (*MedAssets Net Revenue Systems, LLC v. Capitol Medical Center, LLC*, Case No. 2010 CA 005679 C (D.C. Super. Apr. 4, 2012))] (concluding that the District of Columbia could not be attempting to escape liability for Specialty Hospitals's contracts because the District had no liability for these contracts under the limited partnership agreement).

Accordingly, Direct Supply "can prove no set of facts in support of their [breach-of-contract] claim [against NFP] which would entitle them to relief," *Kowal*, 16 F.3d at 1276, and the Court dismisses Count III of the complaint.

### B. Count IV—Direct Supply Sues NFP for Quantum Meruit[12]

Nonetheless, the Court cannot dismiss Direct Supply's quantum-meruit claim against NFP. That claim is premised on NFP's possession and continued enjoyment of Direct Supply's products and already-provided services, and it is independent of whether Specialty Hospitals's contractual debt passed to NFP. [Doc. 26, at 2].

NFP argues that Count IV fails as a matter of law because the plaintiff has not sufficiently pleaded the elements of a quantum-meruit claim. To succeed on a claim of quantum meruit, a plaintiff must establish:

(1) valuable services being rendered;
(2) for the person sought to be charged;
(3) which services were accepted by the person sought to be charged, used and enjoyed by him or her; and
(4) under such circumstances as reasonably notified the person sought to be

---

[12] A quantum-meruit claim can be brought when a party has not been compensated for services rendered under either a quasi-contractual (implied-in-law) obligation or an implied-in-fact contractual obligation. *New Economy Capital, LLC v. New Markets Capital Group*, 881 A.2d 1087, 1095 (D.C. 2005). An implied-in-fact contract is a true contract that meets the elements of a binding agreement. *Id.* A quasi contract is not an actual contract; it is duty that one party has to compensate another party to avoid his own unjust enrichment. *Id.*

Case No. 1:11-CV-683
Gwin, J.

> charged that the plaintiff, in performing such services, expected to be paid by him or her.

*In re Rich*, 337 A.2d 764, 766 (D.C. 1975).

Direct Supply has alleged facts sufficient to state a quantum-meruit claim against NFP. First, Direct Supply alleges that it provided valuable products to United Medical Center under the Products and Services Agreements that have not been paid for. [Doc. 1, ¶ 10]. Second, Direct Supply alleges that NFP has assumed control of the facility and so is benefitting from those unpaid products. [Doc. 1, ¶ 12]. In other words, NFP has benefitted from the products and some services that Direct Supply provided. *In re Rich*, 337 A.2d at 766. Third, pursuant to Mayoral Order 10-117, NFP accepted control of the equipment provided by Direct Supply and has "used and enjoyed" that equipment in operating the facility. *Id.*

Fourth, the complaint sufficiently alleges a number of circumstances that, if true, reasonably put NFP on notice that Direct Supply would expect payment. Most tellingly, Direct Supply sent a letter to NFP on January 26, 2011, which told NFP that Specialty Hospitals had taken the position that NFP was liable for the remaining balance. [Doc. 1, ¶ 16]. Initiating discussions regarding payment for services rendered establishes an "expectation of payment" for a benefit conferred. *Perles v. Kagy*, 362 F. Supp. 2d 195, 199 (D.D.C. 2005), *vacated and remanded on other grounds*, 473 F.3d 1244 (D.C. Cir. 2007).

Additionally, Direct Supply alleges that United Medical Center's property was transferred to NFP under Mayoral Order 10-117. [Doc. 1, ¶ 12]. An entity acquiring rights to property may be on reasonable notice that United Medical Center had not paid for much of its inventory and equipment, particularly when the Substitute Trustee's Deed noted that the conveyance was being

-11-

Case No. 1:11-CV-683
Gwin, J.

"made subject to such liens, leases, encumbrances, reservations, covenants, conditions, easements and restriction, if any, lawfully affecting the . . . property." Direct Supply reasonably alleges that the District of Columbia and NFP were aware that the United Medical Center acquisition would include certain liabilities. *See* [Doc. 7-4, at 2].

Direct Supply's complaint contains sufficient factual allegations to state a quantum-meruit claim against NFP. Accordingly, the Court denies NFP's motion to dismiss Count IV of the complaint.

III.

The Court turns now to Specialty Hospitals's motion to dismiss for failure to join a necessary party. In Specialty Hospitals's view, Direct Supply was required to join the District of Columbia in this action because the District is an indispensable party under Federal Rule of Civil Procedure 19. Federal Rule of Civil Procedure 12(b)(7) provides that a complaint may be dismissed for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Nevertheless, courts are generally reluctant to grant Rule 12(b)(7) motions; "dismissal is warranted only when the defect is serious and cannot be cured." 5C Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, Federal Practice & Procedure § 1359 (3d ed. 2004). As with other Rule 12 motions, the court must accept the complaint's allegations as true for the purposes of a Rule 12(b)(7) motion to dismiss. *16th & K Hotel, LP v. Commonwealth Land Title Ins. Co.*, 276 F.R.D. 8, 12 (D.D.C. 2011).

Also, courts may consider matters outside the pleadings when determining whether Rule 19 requires that a party be joined. *Anderson v. Hall*, 755 F. Supp. 2, 5 (D.D.C. 1991). Whether an absent party is indispensable "can only be determined in the context of particular litigation." *Provident Tradesmens Bank & Trust Co.*, 390 U.S. 102, 118 (1968).

-12-

Case No. 1:11-CV-683
Gwin, J.

Rule 19 "prescribes a three-step procedure for determining whether litigation may proceed in the absence of a particular party": (1) whether the absent party is required to be joined; (2) "whether [the absent party] can be joined"; and (3) if the absent party cannot be joined, "whether the action may still proceed in equity and good conscience." *OAO Healthcare Solutions, Inc. v. Nat'l Alliance of Postal & Fed. Employees*, 394 F. Supp. 2d 16, 19 (D.D.C. 2005).

At the first step, the Court must determine whether the District of Columbia is required to be joined. A party is required to be joined if: (A) "in that person's absence, the court cannot accord complete relief among existing parties"; or (B) "disposing of the action in the [party's] absence may" either "impede the [missing party's] ability to protect [its] interest" or an existing party is at "risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a). The burden is on the moving party to demonstrate that an absent party is required under Rule 19. *Ilan-Gat Engineers, Ltd. v. Antigua International Bank*, 659 F.2d 234, 242 (D.C. Cir. 1981). If the Court determines that an absent party is not required under Rule 19(a), it need not proceed to the second or third steps of the test. *See 16th & K Hotel*, 276 F.R.D. at 14.

Specialty Hospitals argues that the District of Columbia is a required party under Rule 19(a) because, "[g]iven the District of Columbia's role in the operation of the facility prior to the foreclosure, it possesses a legally protected interest which will go unprotected should the case proceed in its absence." [Doc. 3, at 7]. To support this argument, Specialty Hospitals points to the fact that the District once had control of United Medical Center. [Doc. 21, at 2]. Specialty Hospitals does not, however, even hint at why the District's previous control of United Medical Center gives it a legally protected interest in *this* case; the argument is altogether conclusory.

Similarly unpersuasive is Specialty Hospitals's insistence that joinder of the District is

Case No. 1:11-CV-683
Gwin, J.

required because "NFP is an 'instrumentality' of the District of Columbia." [Doc. 3, at 7]. There is no general rule that a party is required to be joined under Rule 19 based merely upon affiliations. *See* [Obadele v. Kelley, Civ. A. No. 80–1844–OG, 1988 WL 40282, at \*3 (D.D.C. Apr. 26, 1988)](#) (When evaluating whether a party is required, the determination should be made depending upon the party's "interest in the controversy" and the court should make this "determination[] pursuant to Rule 19(a)."). Absent a protected interest, the District of Columbia's affiliation with NFP is inconsequential. And, to the extent that the District has a secondary interest in a lawsuit against its instrumentality, NFP—the instrumentality and a defendant in this case—can protect that interest.

The Court concludes that the District of Columbia is not required for the adjudication of this case because the District is not "required for the Court to grant complete relief among" Direct Supply, Specialty Hospitals, and NFP. *16th & K Hotel*, 276 F.R.D. at 14. Accordingly, this litigation may proceed without the District of Columbia, and Specialty Hospitals's motion to dismiss is denied.

IV.

For these reasons, the Court **DENIES** Specialty Hospitals's motions to dismiss Counts I and II of the complaint. In addition, the Court **GRANTS IN PART** and **DENIES IN PART** NFP's motion to dismiss Counts III and IV of the complaint. Count III is **DISMISSED**, but Count IV remains.

IT IS SO ORDERED.


Dated: July 18, 2012               s/      *James S. Gwin*
                                   JAMES S. GWIN
                                   UNITED STATES DISTRICT JUDGE

-14-